Entered on Docket
June 02, 2015
EDWARD J. EMMONS, CLERK
U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: June 2, 2015

_____
**THOMAS E. CARLSON U.S. Bankruptcy Judge**

**UNITED STATES BANKRUPTCY COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re<br>MARIANE VAN DURDEN,<br>         Debtor. | Case No. 14-11049 TC<br>Chapter 7 |
| MARIANE VAN DURDEN,<br>         Plaintiff,<br>   vs.<br>REDWOOD RADIOLOGY GROUP, INC.,<br>         Defendant. | Adv. Proc. No. 14-01147 TC |

**DECISION AFTER TRIAL**

The above-entitled action came to trial on May 5, 2015. Jennifer Hendrickson and John Hendrickson appeared for Plaintiff Mariane Van Durden. Todd A. Roberts appeared for Defendant Redwood Radiology Group, Inc. Upon due consideration, the court issues the following decision, which constitutes its findings of fact and conclusions of law.

DECISION AFTER TRIAL                              -1-

**FACTS**

**A.    PARTIES**

Plaintiff/Debtor Mariane Van Durden (Debtor) filed a Chapter 7 petition in this court on July 19, 2014.  In this action, Debtor seeks damages from Defendant/Creditor Redwood Radiology Group, Inc. (Redwood Radiology) for violation of the automatic stay.

**B.    NOTICE OF BANKRUPTCY FILING AND POST-PETITION COLLECTION ACTIVITY**

Debtor owed money to Redwood Radiology for pre-petition medical services, and in her schedules listed Redwood Radiology and Medical Specialties Managers, Inc. (Redwood's Billing Agent) as creditors.

Debtor's schedules did not set forth the correct address for Redwood Radiology.  The schedules showed the address for Redwood Radiology as 121 *Soyotome* Street, Santa Rosa, California 95405.  The correct address is 121 *Sotoyome* Street.  Def. Exh. C.  Dr. John McGovern, the President of Redwood Radiology, testified that Redwood Radiology did not receive any notice of Debtor's bankruptcy filing until served with the complaint initiating this action on November 7, 2014.  I credit that testimony.

Debtor's schedules did set forth the correct address for Redwood's Billing Agent.  Redwood Radiology had not designated its Billing Agent as its agent for service of process.

On August 22, 2014 (approximately five weeks after the petition date), Redwood's Billing Agent sent Debtor an invoice in the amount of $38 for pre-petition services.

On September 3, 2014, Debtor's counsel sent the following email to Redwood's Billing Agent: "Attached please find the recent invoice as well as the notice of filing for Marianne VanDurden."

**DECISION AFTER TRIAL**                -2-

Attached to this email was a copy of the Notice of Bankruptcy Case Filing issued by this court, and a copy of the August 22, 2014 invoice. The email was not sent to Redwood Radiology itself.

On October 2, 2014, Redwood's Billing Agent once again sent Debtor an invoice in the amount of $38 for pre-petition services.

On October 30, 2014, Debtor filed the complaint initiating this action seeking compensatory and punitive damages for willful violation of the automatic stay (the Complaint).

Dr. McGovern was served with the Complaint on Friday, November 7, 2014. On Saturday, November 8, he sent an email to Barry Haberman, the manager of Redwood's Billing Agent, directing him to stop all collection activity regarding Debtor. Def. Exh. 1. On Monday, November 10, Dr. McGovern called Mr. Haberman and directed him to "zero out" Debtor's account and not to send any further bills to Debtor.

Despite Dr. McGovern's instruction, on February 23, 2015, Redwood's Billing Agent sent Debtor an additional invoice for pre-petition services in the amount of $16.

Debtor received no further invoices from Redwood's Billing Agent. At no time did Redwood Radiology or Redwood's Billing Agent engage in any post-petition collection activity other than the mailing of the three invoices noted above.

### C. EVIDENCE RE EMOTIONAL HARM

Debtor testified that she suffered emotional distress as a result of the post-petition invoices received from Redwood's Billing Agent. She testified that she required medical attention on twelve occasions to deal with the resulting stress, and that she suffered economic loss from missing work during those doctor

visits.

Debtor stated in her deposition that she had been seeing her cardiologist (Dr. Erny) and her internist (Dr. Aye) for five years prior to filing her Chapter 7 petition (32:20-23), and that she was seeing Dr. Shames regarding a thyroid condition (31:13-14).

The following chart summarizes Debtor's testimony regarding her post-petition medical visits and when they occurred in relationship to her receipt of invoices from Redwood Radiology. I assume that Debtor received each invoice three days after it was mailed from Redwood's Billing Agent in Southern California.

| DATE | EVENT / DOCTOR VISIT | WAGES LOST ($30/HOUR) |
|---|---|---|
| Jul 18, 2014 | Chapter 7 filed | |
| **Aug 25, 2014** | **Invoice 1 rec'd ($38)** | |
| Sep 09, 2014 | Dr. Shames (thyroid) | $120.00 |
| **Oct 05, 2014** | **Invoice 2 rec'd ($38)** | |
| Oct 16, 2014 | Dr. Shames (thyroid) | $60.00 |
| Oct 31, 2014 | Dr. Freinkel (allergy) | $45.00 |
| Nov 12, 2014 | Dr. Freinkel (allergy) | $60.00 |
| Dec 05, 2014 | Dr. Erny (heart) | $120.00 |
| Dec 15, 2014 | Dr. Erny (heart) | $45.00 |
| Dec 15, 2014 | Dr. Ozman (kidney) | $45.00 |
| Dec 22, 2014 | Dr. Aye (internal) | $45.00 |
| Dec 29, 2014 | Dr. Erny (heart) | $45.00 |
| Jan 20, 2015 | Dr. Shames (thyroid) | $120.00 |
| Jan 30, 2015 | Dr. Erny (heart) | $120.00 |
| Feb 25, 2015 | Dr. Shames (thyroid) | $15.00 |
| **Feb 26, 2015** | **Invoice 3 rec'd ($16)** | |

DECISION AFTER TRIAL         -4-

1    Debtor testified that she had begun to calm down about her
2 credit situation after filing her Chapter 7 petition in July 2014,
3 but that receiving bills from Redwood's Billing Agent caused her to
4 panic about her credit, and that she made the doctor visits listed
5 above to deal with that stress.
6    Debtor apparently did not relate to any of the doctors that
7 her visits were occasioned by receipt of the Redwood Radiology
8 invoices, and did not call as witnesses any of the physicians who
9 treated her post-petition.
10   Debtor did not call any relatives, friends, or co-workers to
11 testify that Debtor exhibited any signs of mental distress.
12   At her deposition, Debtor testified as follows regarding her
13 reaction to receiving the invoices from Redwood Radiology:
14   Q.   How did you react after you received the first one,
          the second one, the third one?
15   A.   Annoyed.
     Q.   Anything else?
16   A.   Stressed out.
     Q.   Anything else?
17   A.   I think we can leave it at that.
18   Redwood Radiology introduced evidence of a similar lawsuit
19 Debtor filed against Quest Diagnostics, Inc. and Fresno Credit
20 Bureau, in which Debtor alleged that those entities sent her 20
21 invoices and collection notices in violation of the automatic stay.
22 Redwood Radiology offered this evidence to show that any emotional
23 harm Debtor suffered as a result of post-petition collection
24 activity was much more likely caused by the more egregious stay
25 violations by Quest Diagnostics, Inc. and Fresno Credit Bureau,
26 rather than by the minor violations by Redwood Radiology and
27 Redwood's Billing Agent.
28

**D. ATTORNEY'S FEES AS DAMAGES**

The prayer in the Complaint seeks "reasonable attorneys fees." The numbered paragraphs of the Complaint do not allege any facts regarding attorney's fees and do not identify any basis for an award of attorney's fees.

Counsel for Redwood Radiology sought to depose Debtor's counsel regarding any testimony Debtor's counsel might attempt to give. Def. Exh. G (email from Todd Roberts on April 15, 2015 at 11:19 a.m.). Debtor's counsel refused to appear for deposition. Id. (email from John Hendrickson on April 15, 2015 at 11:55 a.m.).

Debtor's trial brief requests "reasonable attorney's fees in the amount of $9,544," but does not attach any declarations or exhibits describing the legal services performed.

At trial, Debtor failed to offer any exhibits regarding the attorney's fees she incurred.

Debtor's counsel did not testify at trial.

Debtor herself testified to only two items of legal expenses incurred in relation to the post-petition actions of Redwood Radiology and Redwood's Billing Agent: (1) a $260 filing fee paid to this court to reopen her Chapter 7 case so that Debtor could file this action; and (2) $409 paid for a transcript of an unspecified hearing or deposition.

**DISCUSSION**

**A. EMOTIONAL DISTRESS AND LOST WAGES**

The Ninth Circuit has held that a debtor injured by a violation of the automatic stay may recover damages for emotional distress, but only if the emotional distress is significant, is clearly established, and is caused by the stay violation in

question.

Although pecuniary loss is not required in order to claim emotional distress damages, not every willful violation merits compensation for emotional distress. Like the *Aiello* court, 293 F.3d at 880, we are concerned with limiting frivolous claims. To that end, we hold that, to be entitled to damages for emotional distress under [362(k)], an individual must (1) suffer significant harm, (2) clearly establish the significant harm, and (3) demonstrate a causal connection between that significant harm and the violation of the automatic stay (as distinct, for instance, from the anxiety and pressures inherent in the bankruptcy process). In so holding, we join a number of other courts that have adopted similar standards.

Fleeting or trivial anxiety or distress does not suffice to support an award; instead, an individual must suffer significant emotional harm. [Citations omitted.]

Consequently, it must be clear that the individual suffered significant emotional harm. An individual may establish emotional distress damages clearly in several different ways.

• Corroborating medical evidence may be offered. *See, e.g., In re Briggs,* 143 B.R. 438, 463 (Bankr.E.D.Mich. 1992) (requiring specific and definite evidence to establish an emotional distress claim arising from violation of the automatic stay); *Stinson,* 295 B.R. at 120 n. 8 ("The majority of the courts have denied damages for emotional distress where there is no medical or other hard evidence to show something more than a fleeting or inconsequential injury." (Internal quotation marks omitted)): *Diviney v. NationsBank of Tex. (In re Diviney),* 211 B.R. 951, 967 (Bankr.N.D.Okla.1997) (holding that, where emotional distress seemed trivial and no medical evidence corroborated the claim, damages for emotional distress were not warranted).

• Non-experts, such as family members, friends, or coworkers, may testify to manifestations of mental anguish and clearly establish that significant emotional harm occurred. [Citation omitted.]

• In some cases significant emotional distress may be readily apparent even without corroborative evidence. For instance, the violator may have engaged in egregious conduct [Citations omitted].

Our third requirement, that of a nexus between the claimed damages and the violation of the stay, appears in the statute itself. The individual must be "injured by" the violation to be eligible to claim actual damages. 11 U.S.C. § 362(h). *See, e.g., Bishop v. U.S. Bank/Firstar*

**DECISION AFTER TRIAL** -7-

> *Bank, N.A. (In re Bishop)*, 296 B.R. 890, 897
> (Bankr.S.D.Ga.2003) (stating that, where emotional
> distress and willful conduct are established, the causal
> link between the violator's acts and the harm must be
> clearly established or readily apparent).

Dawson v. Washington Mutual Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149-50 (9th Cir. 2004), cert. denied, 546 U.S. 822 (2005).

Debtor failed to satisfy the first and second Dawson requirements, because she did not *clearly* establish *significant* emotional harm caused by Redwood Radiology's actions. Dawson states that a debtor may establish such harm (1) by medical evidence, (2) by non-expert corroborating testimony, or (3) by the egregious nature of the stay violation itself. Debtor did not satisfy any of these forms of proof. Debtor also failed to satisfy the third Dawson requirement, because she did not establish that the minor stay violations committed by Redwood Radiology were the cause of whatever emotional distress Debtor did suffer during the time period in question. In so finding, I note the following.

First, this is not a case in which emotional distress is "readily apparent even without corroborative evidence." Id. at 1150. The nature of the stay violations committed by Redwood Radiology and Redwood's Billing Agent were not egregious, nor did the nature and circumstances of those acts "make it obvious that a reasonable person would suffer *significant* emotional harm." Id. (emphasis added). Debtor received three invoices for small amounts of money. Debtor did not receive any phone calls, personal visits, foreclosure or eviction notices, or any other letters or notices threatening any type of collection action, and had no funds or other property seized. The acts in question were likely to cause a reasonable person only fleeting annoyance, not significant

**DECISION AFTER TRIAL** -8-

emotional distress.

Second, Debtor's claim of emotional harm was not corroborated by non-expert witnesses. Debtor did not call any friends, family, or co-workers to testify that Debtor showed signs of mental anguish as a result of receiving the three invoices from Redwood Radiology. Id. at 1149.

Third, the evidence of medical treatment submitted by Debtor also does not show that she suffered significant emotional harm as a result of the stay violations by Redwood Radiology. Debtor did not call any of her treating physicians or other expert medical witnesses. Debtor did testify that she sought medical treatment from specified physicians on several specific occasions as a result of the stress caused by receiving the invoices from Redwood Radiology. Dawson states that a debtor may prove significant emotional harm via "corroborating medical evidence." Id. Neither Dawson nor the decisions cited in Dawson specify whether the debtor must provide testimony by the treating physician or other expert testimony. I do not find it necessary to reach that issue. For the reasons set forth below, I find that the evidence Debtor submitted does not show that she obtained medical treatment as *a result of* acts of Redwood Radiology:

(1) Debtor testified that she had been receiving treatment for heart and other problems from some of her doctors for several years before the petition date. While this fact does not mean that Debtor's pre-petition medical conditions could not have been aggravated by violations of the automatic stay, it does mean that Debtor's frequent visits to the doctor post-petition by themselves do not establish any change in condition suggesting a causal

DECISION AFTER TRIAL         -9-

connection between those visits and stay violations or other post-petition incidents in Debtor's life.

(2) Most of the post-petition doctor visits were quite remote in time from the dates on which Debtor likely received the invoices from Redwood Radiology. Assuming Debtor received each invoice three days after it was mailed, only two of the doctor visits occurred less than 26 days after the date Debtor received an invoice from Redwood Radiology, and those two visits were to a doctor who was treating Debtor for a thyroid condition. The ten other post-petition doctor visits were 26, 37, 61, 61, 71, 78, 85, 107, 117, and 143 days after the second invoice was received and before the third invoice was received. The visits to her cardiologist occurred 61, 71, 85, and 117 days after the most recent invoice from Redwood Radiology.

(3) The two factors just noted about Debtor's doctor visits must be considered in conjunction with the minimal nature of the stay violations committed by Redwood Radiology. Together, the fact that Debtor was routinely seeing doctors for multiple conditions pre-petition, the lack of temporal proximity between the stay violations and Debtor's post-petition doctor visits, and the fact that the stay violations by Redwood Radiology were of a nature that would cause a reasonable person only fleeting annoyance, leads me to find that Debtor did not seek any medical help ***as a result of*** Redwood Radiology's violations of the automatic stay.[1]

---

[1] In determining that Debtor did not suffer emotional harm as a result of the acts of Redwood Radiology and Redwood's Billing Agent, I do not find it necessary to consider the effect of the alleged stay violations by Quest Diagnostics, Inc. and Fresno Credit Bureau. In finding that Debtor did not make the doctor visits listed above as a result of the actions by Redwood Radiology and Redwood's Billing Agent, I necessarily find that she did not suffer the related loss of wages as a result of their actions.

**DECISION AFTER TRIAL**              -10-

Upon consideration of all the evidence, I find that Debtor has not met her burden under Dawson to provide **clear** evidence that she suffered **significant** emotional harm **caused by** Redwood Radiology's violations of the automatic stay, and I therefore decline to award any damages for emotional harm.

**B. PUNITIVE DAMAGES**

The evidence does not support an award of punitive damages for the following reasons. First, at no time did either Redwood Radiology or Redwood's Billing Agent commit any egregious violation of the automatic stay. The Billing Agent sent Debtor three bills, each in the amount of $38 or less. There were no calls, no visits, no foreclosure notices, no letters or notices threatening any action against Debtor, and no seizure of Debtor's assets. Second, Redwood Radiology did everything it could to cause its Billing Agent not to send any further bills to Debtor the day after first receiving notice of the stay violation. Redwood Radiology's President, Dr. John McGovern, sent a detailed email to the Billing Agent the first day after receiving the Complaint, and he personally called the President of the Billing Agent the next business day to instruct the Billing Agent to "zero out the account" and not to send any further bills to Debtor. Third, Redwood Radiology itself did not receive notice of the filing of the Chapter 7 petition before it received the Complaint in this action.

**C. ATTORNEY'S FEES**

Debtor is not entitled to recover attorney's fees, because under binding Ninth Circuit authority she may recover fees only as damages, because she was required to offer proof of damages at

trial (not by post-trial motion), and because she failed to introduce at trial any evidence regarding attorney's fees.

In the Ninth Circuit, a debtor may recover attorney's fees under section 362(k) only for those services necessary to stop the violation of the automatic stay, not for bringing suit to recover those costs and other damages.

> The dictionary defines "actual damages" as "[a]n amount awarded ... to compensate for a proven injury or loss; damages that repay actual losses." BLACK'S LAW DICTIONARY 416 (8th ed.2004). Following this definition, the proven injury is the injury resulting from the stay violation itself. Once the violation has ended, any fees the debtor incurs after that point in pursuit of a damage award would not be to compensate for "actual damages" under § 362(k)(1).

Sternberg v. Johnston, 595 F.3d 937, 947 (9th Cir. 2010), cert. denied, 562 U.S. 831 (2010).

Attorney's fees recoverable as *damages* must be proved by evidence introduced at trial, not by post-trial motion: "A claim for attorney's fees and related nontaxable expenses must be made by motion *unless the substantive law requires those fees to be proved at trial as an element of damages*." Fed. R. Civ. P. 52(d)(2)(A) (emphasis added) (incorporated by Fed. R. Bankr. P. 52(b)(2)(A)). Accord Advisory Committee Notes regarding 1993 Amendments to Fed. R. Civ. P. 54 ("As noted in subparagraph (A), [recovery of fees by post-trial motion] does not, however, apply to fees recoverable as an element of damages, as when sought under the terms of a contract; such damages typically are to be claimed in a pleading and may involve issues to be resolved by a jury. . . .").

Debtor did not offer at trial any evidence regarding the attorney's fees she expended to cause Redwood Radiology to stop sending her bills. The only evidence she submitted in any way

DECISION AFTER TRIAL                -12-

related to legal costs was evidence that she paid a $260 fee to the court to reopen her Chapter 7 case so that she could file this adversary proceeding, and that she paid $409 for a reporter's transcript of an unspecified hearing or deposition. Debtor did not show that even these limited expenses were incurred in securing compliance with the automatic stay. The evidence indicates that Redwood Radiology did everything it could to prevent Debtor from receiving any additional bills as soon as it was advised of the stay violation. Thus, Debtor has not shown that is was necessary to file a lawsuit and incur the related filing fee and transcript cost to cause the stay violation to stop.

Any doubt about whether Rule 54(d)(2)(A) should be applied to this case should be resolved against Debtor, because Debtor's attorney actively frustrated Redwood Radiology's attempts to investigate the extent to which attorney's fees were incurred for the purpose of pursuing this litigation, rather than to stop the violation of the automatic stay. Knowing that Debtor's attorney would be an important witness on this issue, Redwood Radiology's attorney attempted to depose Debtor's attorney. Debtor's attorney refused to appear for that deposition and did not testify at trial.

I need not determine whether Debtor might be entitled to recover attorney's fees as a remedy for contempt of court, because Debtor did not seek such a remedy. Nowhere in the Complaint did Debtor mention civil contempt or invoke Bankruptcy Rules 9020 and 9014, which govern civil contempt proceedings.

**D. OTHER ISSUES**

In light of my determination that Debtor suffered no cognizable damages as a result of post-petition collection activity

DECISION AFTER TRIAL                    -13-

Case: 14-01147    Doc# 25    Filed: 06/02/15    Entered: 06/02/15 15:32:03    Page 13 of 14

by either Redwood Radiology or Redwood's Billing Agent, I do not address: (1) whether notice of the bankruptcy filing to Redwood's Billing Agent constituted notice to Redwood Radiology; (2) whether the acts of Redwood's Billing Agent could be considered willful acts by Redwood Radiology before the latter received notice of the bankruptcy filing; and (3) whether Redwood Radiology could be considered to have willfully violated the automatic stay when it acted immediately to stop all collection activity by its agent the day after it first received actual notice of the bankruptcy filing.

**CONCLUSION**

Debtor failed to show that she suffered any actual damage as a result of the minor violations of the automatic stay by Redwood Radiology and Redwood's Billing Agent.

**\*\*END OF DECISION AFTER TRIAL\*\***